UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CRAIG ROWELL, et al.,

Plaintiffs,

v.

LABCORP CENTRAL LABORATORY SERVICES LIMITED PARTNERSHIP,

Defendant.

Case No. 24-cv-04195-TSH

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**
**PUBLIC VERSION OF ECF NO. 75**

Re: Dkt. Nos. 53, 54

## I. INTRODUCTION

Plaintiffs Craig Rowell, Alaina Aikin, and Sanjay Garg (collectively, "Plaintiffs") bring this action against Defendant Labcorp Central Laboratory Services Limited Partnership ("Labcorp") for claims arising out of their employment with Labcorp. ECF No. 1. Pending before the Court are Plaintiffs' Motion for Summary Judgment (ECF No. 53) ("Pls.' Mot.") and Labcorp's Motion for Summary Judgment (ECF No. 52-2) ("Def.'s Mot.").[1] For the reasons stated below, the Court **GRANTS IN PART and DENIES IN PART** Plaintiffs' Motion and **GRANTS IN PART and DENIES IN PART** Labcorp's Motion.[2]

## II. BACKGROUND

### A. Factual Background

Labcorp, a citizen of Delaware and North Carolina, has a central laboratory services ("CLS") unit that provides outsourced professional services in support of clinical trials to biotech and pharmaceutical businesses developing new drug and other therapies.[3] Not. of Removal ¶¶ 5–7

[1] Labcorp filed its Motion for Summary Judgment under seal. *See* ECF No. 52-2. Labcorp also filed a redacted version of the Motion on the public docket. *See* ECF No. 54.

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 6, 7.

[3] Labcorp's sole general partner is Labcorp Development Inc., a Delaware corporation with a principal place of business in North Carolina. Not. of Removal ¶¶ 5–6. Labcorp's sole limited

United States District Court
Northern District of California

(ECF No. 1); Labcorp's Controverting Statement of Facts ("Def.'s CSF") ¶ 5 (ECF No. 69-1). Plaintiffs are all California residents who are employed in Labcorp's CLS business unit. Compl. ¶¶ 4–6 (ECF No. 1 at 11); Not. of Removal ¶ 4; Plaintiffs' Separate Statement of Facts ("Pls.' SSF") ¶ 1 (ECF No. 61); Def.'s CSF ¶ 1.

Overall, Plaintiffs allege that Labcorp "engages in an unlawful commission scheme, withholding earned wages from employees for business costs unrelated to anything the employees did or failed to do." Compl. ¶ 1.

**1. Plaintiffs' Employment**

Plaintiffs are all Business Development Directors ("BDDs") employed in Labcorp's CLS business unit. Pls.' SSF ¶ 1; Def.'s CSF ¶ 1. Garg joined Labcorp on May 24, 2021; Aikin joined Labcorp as a BDD on April 11, 2021; and Rowell took the BDD position on January 24, 2022, coming from another branch of Labcorp. Pls.' SSF ¶¶ 2–4; Def.'s CSF ¶¶ 2–4. Plaintiffs all have several years' experience in sales in the life science space. *See* Declaration of Craig Rowell ("Rowell Decl.") ¶ 2 (almost 20 years' experience including different marketing and sales positions) (ECF No. 55); Declaration of Sanjay Garg ("Garg Decl.") ¶ 3 (various sales positions since 2015) (ECF No. 56); Declaration of Alaina Aikin ("Aikin Decl.") ¶ 3 (multiple sales positions beginning in 2017) (ECF No. 57).

BDDs are salespeople who are involved with service contracts between Labcorp and its clients. The contracts often span many years because Labcorp's clients are engaged in long-lasting clinical trials. Declaration of Christopher Goff ("Goff Decl.") ¶ 2 (ECF No. 54-16). Labcorp's Senior Director of Sales Compensation, Christopher Goff, avers that BDDs "are primarily responsible for cultivating and maintaining both new and existing client relationships in the biotechnology and pharmaceutical industry." *Id.* ¶ 3. Rowell avers that BDDs focus on "new sales" and are continually told the focus of their efforts "should be on generating new programs." Rowell Decl. ¶ 7. Garg avers that the primary focus of BDDs "is on securing new business and winning accounts from competitors," which can include new clients, existing clients starting new

---

partner is Labcorp CTTS Inc., a Delaware corporation with a principal place of business in North Carolina. *Id.*



United States District Court
Northern District of California

trials, and existing clients that decide to expand the scope of a trial. Garg Decl. ¶¶ 33–34.

BDDs are assigned territories where the BDD "is responsible for sales performance attributable to a particular geographic area." Pls.' SSF ¶ 6; Def.'s CSF ¶ 6; *see, e.g.,* Declaration of Jemuel Gascon ("Gascon Decl.") ¶ 3 (ECF No. 54-2), Ex. A at 7 ("2022 Plans") (ECF No. 52-4). Goff testified that BDDs are "accountable for any activity upon entry into that territory" because they inherit "all of the values of the active contracts and [are] expected to grow it, regardless of who sold the initial transaction and how long ago it was sold." Gascon Decl., Ex. G ("Goff Dep. Tr.") at 118:6–11 (ECF No. 54-9). It "is ultimately the BDD's responsibility to validate what is the activity in their territory" and "to maximize it." *Id.* at 107:3–7. Plaintiffs state that they were not even aware of other contracts sold in their territory before they took over the territory. Rowell avers that "[n]o list of past, current or potential accounts was supplied or discussed during the hiring, on-boarding, or training process," and that he was never given any information about studies previously sold in his territory. Rowell Decl. ¶ 6. Garg requested but was never given a current list of accounts in his territory. Garg Decl. ¶ 32. Garg avers that he was directed to Salesforce for his accounts, but that platform makes it difficult to track meaningful account activity because it does not provide a reliable way of generating a complete list of active accounts assigned to a BDD. *Id.* ¶¶ 35–36. Aikin avers that when she asked for a current list of her accounts at hiring, she was directed to Salesforce; however, the platform does not generate a list of all accounts assigned to a BDD. Aikin Decl. ¶ 18. Goff testified that BDDs have access to their accounts through teams that do sales onboarding, scorecards that are distributed to BDDs, and dashboards in Salesforce. Goff Dep. Tr. at 188:2–22.

**2. Plaintiffs' Compensation**

When Plaintiffs were hired, they were offered compensation consisting of a base salary and the opportunity to earn variable incentive compensation under Labcorp's Sales Compensation Plan (the "Plan"). Pls.' SSF ¶ 13; Def.'s CSF ¶ 13. The incentive compensation is governed solely by Plaintiffs' Plans and offer letters. Labcorp's Separate Statement of Facts ("Def.'s SSF") ¶ 3 (ECF No. 52-3); Plaintiffs' Controverting Statement of Facts ("Pls.' CSF") ¶ 3 (ECF No. 67). The incentive compensation is divided into two components: the Net Contracted Orders ("NCO")

Component which makes up 85% of the incentive compensation; and the Performance Management and Development ("PMD") Component which makes up 15% of the incentive compensation. Pls.' SSF ¶ 15; Def.'s CSF ¶ 15. Only the NCO Component is at issue in this case.

A Plan's "Target Incentive" is "the annual amount that could be earned if the Plan Participant achieves 100% of his/her assigned objectives for applicable components." *E.g.,* 2022 Plans at 6. The amount actually earned can be greater than or less than the Target Incentive, "depending on the Plan Participant's individual performance and the impact of the pay tables described in the Plan Details section." *Id.*

For the NCO Component Target Incentive, BDDs have an Annual Performance Target. *E.g., id.* at 5, 7. BDDs receive the NCO Component Target Incentive if their Cumulative Performance Attainment, determined at the end of the Plan year, is 100% of the BDD's Annual Performance Target. Def.'s SSF ¶ 11; Pls.' CSF ¶ 11; *e.g.,* 2022 Plans at 3–4. A BDD's Cumulative Performance Attainment is expressed as a percentage, calculated by dividing the net value (positive or negative) of all NCOs within the BDD's territorial assignment by the BDD's Annual Performance Target. Def.'s SSF ¶ 9; Pls.' CSF ¶ 9. BDDs are eligible to receive an amount greater than their NCO Component Target Incentive if their Cumulative Performance Attainment exceeds 100% of their Annual Performance Target. Def.'s SSF ¶ 13; Pls.' CSF ¶ 13; *e.g.,* 2022 Plans at 5.

NCOs are fully executed contracts between Labcorp and its client, and are valued at the anticipated revenue Labcorp will receive for the services it performs, not the actual revenue received. Def.'s SSF ¶ 6; Pls.' CSF ¶ 6. The following items are included in determining the NCO Component: (1) the initial contract between Labcorp and a client; (2) contract amendments changing the scope of work; (3) reconciliations upon the completion of a client's clinical trial or study, which compares the anticipated revenue at the time the contract was executed with the actual revenue; and (4) contract cancellations. Def.'s SSF ¶ 7; Pls.' CSF ¶ 7. Work scope changes (aka contract amendments) and reductions (aka reconciliations) are positive or negative adjustments that can increase or decrease an NCO's value and thus affect a BDD's Cumulative Performance Attainment. Def.'s SSF ¶ 9; Pls.' CSF ¶ 9.

All Plans state:

> NCOs will be credited to the Plan Participant's territory where the Request for Proposal (RFP) was issued unless the management team determines the credit will be assigned to another Plan Participant, who had primary responsibility for the RFP. If the RFP is handled by another Plan Participant, the RFP will be reassigned to the correct Plan Participant's territory for attainment credit. For sponsor's virtual employees residing outside of the sponsor's home office, the account must be transferred to the Plan Participant who covers the sponsor's home/physical corporate office territory. A Plan Participant will not receive credit for any NCOs where they did not have meaningful engagement.

Pls.' SSF ¶ 25; Def.'s CSF ¶ 25; *see, e.g.,* 2022 Plans at 8 (emphasis in original).

The 2022 and 2023 Plans state: "A study that has not started or has billed limited Revenue for study activity regardless of original contract date will be applied to the original Plan Participant who was awarded the initial work and the current management team." 2022 Plans at 7; Gascon Decl., Ex. B at 7 ("2023 Plans") (ECF No. 52-5). The 2024, 2025, and 2026 Plans state:

> NCO Cancellations are NCOs that were previously signed but were a) not initiated after execution or b) revenue invoiced under the completed contract is less than 10% of the total contract value upon termination. The value of cancellation equals the value of the contracted new order plus any subsequent contract amendments, minus revenue received under the study. Cancellations are usually negative in value.

Gascon Decl., Exs. C at 7 ("2024 Plans") (ECF No. 52-6), D at 7 ("2025 Plans") (ECF No. 52-7), E at 7–8 ("2026 Plans") (ECF No. 52-8).

In practice, contract cancellations impact a BDD's NCO value for a Plan year only if the BDD received initial credit for the NCO that is cancelled. Def.'s SSF ¶ 10; Pls.' CSF ¶ 10. However, contract amendments and reconciliations impact a BDD's NCO value for a Plan year if the initial NCO was assigned to the BDD's territory regardless of whether that BDD received initial credit for the NCO. Def.'s SSF ¶ 15; Pls.' CSF ¶ 15. The parties dispute whether the Plans permit this practice.

The NCO Component Target Incentive is "calculated on a year-to-date basis" and has a "pay frequency" of "quarterly." *E.g.,* 2022 Plans at 5, 9. Once the amount of the NCO Component Target Incentive earned is determined, a true-up is done with any quarterly payments Labcorp made to the BDD to match that amount. Def.'s SSF ¶ 14; Pls.' CSF ¶ 14; *e.g.,* 2022

Plans at 9.

For each of the Plan years between 2022 and 2026, all Plaintiffs signed a "Statement of Acceptance" for each Plan stating that the BDD has "received, read, understand and agree to the terms and conditions of the Plan document presented to [them]." Def.'s SSF ¶ 4; Pls.' CSF ¶ 4.

Plaintiffs aver that in their experience as salespeople, they have not seen a situation where an employee's earnings are reduced based on sales closed prior to the employee's employment. Aikin Decl. ¶¶ 8–9; Garg Decl. ¶¶ 11–12, 30–31. None of the Plaintiffs would have accepted a job with Labcorp had they known about this practice. Rowell Decl. ¶ 22; Aikin Decl. ¶ 8; Garg Decl. ¶ 15. Goff testified that in his experience, it is a common structure for incentive plans to offer rewards based on adding value to all contracts in an employee's portfolio as this increases the employer's profits. Goff Dep. Tr. at 49:14–50:18.

**3. The Parties' Actions**

After learning that Labcorp reduced their incentive compensation for NCOs Plaintiffs did not sell, Plaintiffs reached out to management. In 2022, Rowell reached out to his manager, Erin Bennett, to ask what a reduction was as he was assessed reductions for accounts he knew nothing about. Rowell Decl. ¶ 15. Bennett relayed that some of the reductions were not justified and that she would dig into the "why/how of the timing of study closures" for other reductions that were "impactful." *Id.* Ex. B (Emails) (ECF No. 55-2). Aikin reached out to her manager regarding a reduction from December 2022 based on a study sold in 2014 where the last test kit was received by Labcorp before Aikin was hired. Aikin Decl. ¶ 17. The manager agreed that Aikin "should not bear responsibility for this reduction" because it "should have been processed before she took responsibility for plan." *Id.* Ex. O (Appeal) (ECF No. 57-1).

On November 17, 2023, Plaintiffs' counsel sent a letter via email to Labcorp's counsel "requesting a copy of Plaintiffs' personnel records pursuant to Labor Code § 1198.5." Declaration of Alan F. Cohen ("Cohen Decl.") ¶ 2 (ECF No. 58), Ex. U (Demand Letter) (ECF No. 58-1). Labcorp replied on November 21, 2023, stating it was "compiling the materials requested" in Plaintiffs' letter and that it anticipated providing "the requested information by next week." *Id.* ¶ 3, Ex. V (Response) (ECF No. 58-2). Plaintiffs followed up with Labcorp on February 20 and

May 15, 2024, regarding the requested materials but never received a response from Labcorp. *Id.* ¶¶ 4–5, Exs. W (ECF No. 58-3), X (ECF No. 58-4). Plaintiffs' counsel "never received any of the requested personnel records from Labcorp." *Id.* ¶ 6.

**B. Procedural Background**

On June 10, 2024, Plaintiffs filed this action against Labcorp in Alameda County Superior Court, Case No. 24CV079102. Not. of Removal, Ex. 1 ("Compl.") (ECF No. 1 at 11). Plaintiffs allege five causes of action under California law: (1) Failure to Pay Wages; (2) Failure to Provide Compliant Itemized Wage Statement (Cal. Lab. Code § 226); (3) Failure to Comply with Labor Code Inspection Demand; (4) Breach of Contract; and (5) Violation of Unfair Competition Law (Cal. Bus. & Prof. Code § 17200). Compl. ¶¶ 22–51. Plaintiffs seek, *inter alia*, compensatory damages and injunctive relief. *Id.* at 8.

On July 10, 2024, Labcorp filed an Answer in state court. Not. of Removal, Ex. 7 ("Answer") (ECF No. 1 at 36). On July 11, 2024, Labcorp removed the action to the Northern District of California. Not. of Removal (ECF No. 1). Labcorp alleges the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. *Id.* ¶ 3.

On August 13, 2026, Plaintiffs filed their instant Motion for Summary Judgment. ECF No. 53 ("Pls.' Mot."). On August 31, 2026, Labcorp filed an Opposition to Plaintiffs' Motion. ECF No. 69 ("Def.'s Opp."). On September 8, 2026, Plaintiffs filed a Reply. ECF No. 72 ("Pls.' Reply").

On August 13, 2026, Labcorp filed its instant Motion for Summary Judgment. ECF No. 52-2 ("Def.'s Mot."). On August 27, 2026, Plaintiffs filed an Opposition to Labcorp's Motion. ECF No. 62 ("Pls.' Opp."). On September 8, 2026, Labcorp filed a Reply. ECF No. 71 ("Def.'s Reply").

## III. LEGAL STANDARD

Summary judgment is proper where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*

United States District Court
Northern District of California

United States District Court
Northern District of California

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that may affect the outcome of the case, and a dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 250. All reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). However, it is not the task of the Court "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden "to identify with reasonable particularity the evidence that precludes summary judgment." *Id.*; *see also Cafasso, U.S. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (noting the nonmoving party "must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations") (cleaned up). Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in briefs.") (cleaned up).

"While the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (citing Fed. R. Civ. P. 56(c) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.")). If the nonmoving party fails to identify such evidence, or if it offers evidence that is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50 (cleaned up).

United States District Court
Northern District of California

## IV. DISCUSSION

Plaintiffs move for partial summary judgment (1) on the issue of liability for Claims 1, 2, 4, and 5; and (2) on the issues of liability, penalties, and reasonable attorneys' fees and costs on Claim 3. Pls.' Mot. at 1–2. Labcorp moves for summary judgment on each of Plaintiffs' claims. Def.'s Mot. at 2.

In sum, the Court concludes that the undisputed facts show that Plaintiffs cannot prove required elements of Claims 1 and 2. Therefore, summary judgment for Labcorp is warranted on these claims. However, the Court concludes that the undisputed facts show that summary judgment for Plaintiffs is warranted on Claim 3. The Court further concludes that issues of fact preclude resolving Claims 4 and 5 on summary judgment. Therefore, summary judgment is not warranted for either party on these claims.

### A. Evidentiary Matters

In its Opposition, Labcorp objects to evidence submitted by Plaintiffs in support of their Motion for Summary Judgment. Def.'s Opp. at 26–29. And in its Reply, Labcorp objects to evidence submitted by Plaintiffs in support of their Opposition to Labcorp's Motion. Def.'s Reply at 8–11. The Court addresses only those objections that are necessary to ruling on the Motions for Summary Judgment below. The Court declines to rule on Labcorp's remaining objections.

#### 1. Relevance Objections

As an initial matter, Labcorp objects to much of Plaintiffs' evidence on the basis that the evidence is not relevant under Federal Rules of Evidence 401 and 402.

"[O]bjections for relevance are generally unnecessary on summary judgment because they are duplicative of the summary judgment standard itself." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021) (quoting *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006)). "[I]f evidence submitted on summary judgment could create a genuine dispute of material fact, it is, by definition, of consequence in determining the action, and therefore relevant. . . . Conversely, if the submitted evidence does not create a genuine dispute of material fact, there is no need for the court to separately determine whether it is relevant because, even assuming it is not, it will not affect the ultimate summary judgment ruling." *Id.* (cleaned up).

Accordingly, the Court **OVERRULES** Labcorp's relevance objections, as they are duplicative of the summary judgment standard.

**2. Hearsay Objections**

Labcorp objects to paragraph 15 of Rowell's Declaration, Exhibit B to Rowell's Declaration, paragraph 17 of Aikin's Declaration, and Exhibit O to Aikin's Declaration on the basis that they are hearsay. Def.'s Opp. at 26, 29.

Hearsay is an out of court statement made by a declarant, offered to prove the truth of the matter asserted. Fed. R. Evid. 801. Hearsay is not admissible at trial unless permitted by law or allowed under an exclusion or exception. *Id.* at 802; *see also Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 778 (9th Cir. 2002) ("In the absence of a procedural rule or statute, hearsay is inadmissible unless it is defined as non-hearsay under Federal Rule of Evidence 801(d) or falls within a hearsay exception under Rules 803, 804 or 807.").

However, "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." *Sandoval*, 985 F.3d at 666 (quoting *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003)). "If the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment." *Id.* "Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." 2010 Adv. Comm. Note, Fed. R. Civ. P. 56.

Here, the Court finds that the statements in Exhibit B to Rowell's Declaration and Exhibit O to Aikin's Declaration are not excluded hearsay. Under the Federal Rules of Evidence, a party-opponent's prior out of court statement is admissible as non-hearsay if "[t]he statement is offered against an opposing party" and "was made by the party in an individual or representative capacity" or "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(A), (D). Because Exhibit B and Exhibit O were

United States District Court
Northern District of California

United States District Court
Northern District of California

created by Labcorp managers, and are being offered by Plaintiffs, they constitute non-hearsay under the party-opponent exemption even if they are offered for the truth of the matter asserted. Indeed, it is unclear why Labcorp raised these objections when it proclaims that "Bennett will testify that, early on in their employment, she addressed Plaintiffs' questions about how the Plan worked." Def.'s Opp. at 22 n.10. Surely Plaintiffs' evidence "can be presented in a form that would be admissible at trial" as they can cross-examine their manager on these topics. *Sandoval*, 985 F.3d at 666. By that same token, the Court finds that the averments made by Rowell and Aikin in their Declarations regarding their managers' statements should not be excluded as hearsay at this stage because they could be presented in an admissible form at trial.

Accordingly, the Court **OVERRULES** Labcorp's hearsay objections to paragraph 15 of Rowell's Declaration, Exhibit B to Rowell's Declaration, paragraph 17 of Aikin's Declaration, and Exhibit O to Aikin's Declaration.

### 3. Foundation And Opinion Evidence Objections

Labcorp objects to paragraphs 8 and 9 of Aikin's Declaration and paragraphs 30 and 31 of Garg's Declaration on the basis that they lack foundation and constitute improper opinion evidence. Def.'s Opp. at 28.

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602. "[A]n objection to admission of evidence on foundational grounds must give the basis for objection in a timely way to permit the possibility of cure." *Sandoval*, 985 F.3d at 666 (cleaned up). As with other objections, if a party can cure a defect in foundation, the evidence is properly considered on summary judgment. *Id.* at 667. Under the Federal Rules of Evidence, opinion testimony by lay witnesses is limited to one that is:

> (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

Here, the Court finds that Aikin and Garg establish a proper foundation for their averments regarding how the sales industry operates in the life science space. Aikin Decl. ¶¶ 8–9; Garg Decl. ¶¶ 30–31. Plaintiffs have personal knowledge of sales compensation in this industry as they have several years' experience in various sales positions in the industry. Aikin Decl. ¶ 3; Garg Decl. ¶ 3. The Court thus finds that these averments do not violate Rule 701. Plaintiffs' observations are rationally based on their perception and extensive experience in the industry.

Accordingly, the Court **OVERRULES** Labcorp's foundation and opinion evidence objections to paragraphs 8 and 9 of Aikin's Declaration and paragraphs 30 and 31 of Garg's Declaration.

**B. Failure to Pay Wages Claim (Claim 1)**

Plaintiffs allege that Labcorp failed to properly compensate Plaintiffs for all labor performed and wrongfully withheld earned wages from Plaintiffs. Compl. ¶¶ 22–27. Plaintiffs argue that partial summary judgment in their favor is warranted on Claim 1 for liability because the undisputed facts show that Labcorp's Plans make deductions "from Plaintiffs' earned wages to offset commission amounts that had been paid years earlier to previous employees for sales later determined to have underperformed." Pls.' Mot. at 1:25–2:2. Labcorp argues that summary judgment in its favor is warranted because (1) any compensation received pursuant to the Plans is not a "wage"; and (2) even if is a wage, the Plans do not deduct from "earned" wages. Def.'s Mot. at 17:10–24:7.

Under Section 221 of the California Labor Code ("Section 221"), "[i]t shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Cal. Lab. Code § 221. Section 221 protects employees against "a prohibited recapture of compensation already offered, promised, or paid." *Prachasaisoradej v. Ralphs Grocery Co.*, 42 Cal. 4th 217, 237 (2007).

Here, the Court finds that the undisputed facts show that the NCO Component Target Incentive does not violate Section 221. The parties disagree on whether the Plans' incentive compensation from the NCO Component constitutes "wages" under Section 221. Plaintiffs assert that the compensation is a commission plan. Pls.' Mot. at 13:16–16:23. Labcorp asserts that the

compensation is variable bonus compensation and not commission wages. Def.'s Mot. at 17:19–20:17.

"'Wages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." Cal. Lab. Code § 200(a). "Commission wages are compensation paid to any person for services rendered in the sale of such employer's property or services and based proportionately upon the amount or value thereof." *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 803 (1999) (quoting Cal. Lab. Code § 204.1). Two requirements

> must be met before a compensation scheme is deemed to constitute 'commission wages.' First, the employees must be involved principally in selling a product or service, not making the product or rendering the service. Second, the amount of their compensation must be a percent of the price of the product or service.

*Id.* at 804 (citation omitted).

Labcorp argues that the Plans' NCO Component Target Incentive fails the second element of the commission wages test because

> [r]ather than offering pay based on a percentage of the price of any *particular* sale, Labcorp offers incentive pay based on the performance of a BDD's *entire portfolio*—i.e., ***all*** NCOs in a BDD's territorial assignment as measured against Labcorp's discretionary performance metrics for that BDD. . . . Thus, the NCO value is not an aggregate of sales; it is an aggregation of ***all activity in the BDD's portfolio***, including new contracted orders, positive or negative contract amendments, positive or negative reconciliations, and contract cancellations.

Def.'s Mot. at 18:10–21 (emphasis in original). Plaintiffs contend that the calculations for the NCO Component Target Incentive "rise and fall in direct proportion to the value of services sold." Pls.' Opp. at 11:9–17.

It is undisputed that four variables affect the NCO Component Target Incentive: new NCOs, NCO amendments, NCO reconciliations, and NCO cancellations. Def.'s SSF ¶ 7; Pls.' CSF ¶ 7; *e.g.,* 2022 Plans at 8. In other words, multiple inputs are used to generate one output, the BDD's Cumulative Performance Attainment, which is then used to calculate the NCO Component Target Incentive. Def.'s SSF ¶¶ 9, 11; Pls.' CSF ¶¶ 9, 11; *e.g.,* 2022 Plans at 3–4. Because each input can change (i.e. none of the inputs are constant), the input for new NCO sales cannot

singlehandedly cause an increase or decrease in the NCO Component Target Incentive. As such, the compensation from the NCO Component is not a set percent of a BDD's sales, and it fails the California Supreme Court's test for commission wages. *Ramirez*, 20 Cal. 4th at 804. Therefore, because the NCO Component Target Incentive is not proportional to the sale of NCOs, that compensation cannot be commission wages. Cal. Lab. Code § 204.1.

But that does not end the inquiry. "Incentive compensation, such as bonuses and profit-sharing plans, also constitute wages." *Schachter v. Citigroup, Inc.*, 47 Cal. 4th 610, 618 (2009); *see* Pls.' Reply at 2:11–18 ("even if these were bonuses rather than commissions, the same rules would apply"). However, even characterized as a bonus wage, the NCO Component Target Incentive does not violate Section 221. The crux of a Section 221 violation is that an employer makes an unauthorized deduction from compensation promised for an employee's labor so that the employee receives less compensation than promised. *Prachasaisoradej*, 42 Cal. 4th at 228. But as discussed, contrary to Plaintiffs' assertion, BDDs are not promised compensation based on their sales alone; instead, they are offered compensation based on all NCO sales, amendments, reconciliations, and cancellations in their territory. Plaintiffs' reliance on *Hudgins v. Neiman Marcus Grp., Inc.* is therefore misplaced. *See* Pls.' Mot. at 14:7–15:11 (citing 34 Cal. App. 4th 1109 (1995)); Pls.' Opp. at 16:11–18:2 (same). In *Hudgins*, "the employee's compensation, whether regular or supplementary, was set, in essence, as a sales commission, i.e., a specified and promised share of the revenues attributable to that employee's personal sales or managerial efforts." *Prachasaisoradej*, 42 Cal. 4th at 235 (discussing *Hudgins*). But here, Plaintiffs' incentive compensation depends on the actual revenue Labcorp receives for NCOs in a given year and is like the plan in *Prachasaisoradej*, which did not violate Section 221. *Cf. id.* at 237 ("by the Plan's very nature, supplementary incentive compensation for a particular period depended on the extent to which the store's revenues for the relevant period exceeded its operating expenses, as defined in the Plan"); *see* Def.'s Mot. at 18:28–20:17. Plaintiffs acknowledge as much—while they take issue with adjustments made on NCOs sold by prior BDDs, they do not quarrel with adjustments made on NCOs they initially sold. Pls.' Mot. at 17:1–2; Pls.' Opp. at 24:14–25:3. Thus, the annual NCO Component Target Incentive can never be based solely off Plaintiffs'

yearly sales because revenue generated from Plaintiffs' past NCOs is factored into the calculation for the current year's compensation.

Accordingly, the Court **GRANTS** Labcorp's Motion for Summary Judgment on Claim 1. The Court **DENIES** Plaintiffs' Motion for Summary Judgment on Claim 1 for liability.

**C. Failure to Provide Compliant Itemized Wage Statement Claim (Claim 2)**

Plaintiffs allege that Labcorp knowingly and intentionally failed to comply with California Labor Code § 226 ("Section 226") on wage statements provided to Plaintiffs. Compl. ¶¶ 28–33. Plaintiffs argue that partial summary judgment in their favor is warranted on Claim 2 for liability because it flows automatically from the failure to pay all wages when due. Pls.' Mot. at 7:13–19. Labcorp argues that summary judgment in its favor is warranted because (1) it furnished accurate wage statements; and (2) even if the wage statements are inaccurate, there is no evidence Labcorp acted knowingly and willfully. Def.'s Mot. at 26:26–28:7.

Section 226

> requires an employer to supply each employee, 'semimonthly or at the time of each payment,' a written wage statement listing the employer's name and address; identifying the pay period; itemizing the total hours worked, applicable hourly rates, hours worked at each rate, gross and net wages earned, and any deductions taken; and disclosing other prescribed information.

*Ward v. United Airlines, Inc.*, 9 Cal. 5th 732, 743 (2020) (citing Cal. Lab. Code § 226(a)). In the case of a "knowing and intentional failure" to comply with Section 226, "the law provides for statutory penalties of up to $4,000 or the employee's actual damages, should the employee's damages exceed the statutory penalties." *Naranjo v. Spectrum Sec. Servs., Inc.*, 15 Cal. 5th 1056, 1064 (2024). "[I]f an employer reasonably and in good faith believed it was providing a complete and accurate wage statement in compliance with the requirements of section 226, then it has not knowingly and intentionally failed to comply with the wage statement law." *Id.* at 1065.

Here, the parties agree that Plaintiffs' claim under Section 226 requires that Plaintiffs establish a violation of Section 221. Pls.' Mot. at 7:13–19; Def.'s Opp. at 24:9–17. Therefore, because Claim 1 fails, Claim 2 likewise fails.

Accordingly, the Court **GRANTS** Labcorp's Motion for Summary Judgment on Claim 2.

The Court **DENIES** Plaintiffs' Motion for Summary Judgment on Claim 2 for liability.

**D. Failure to Comply with Labor Code Inspection Demand Claim (Claim 3)**

Plaintiffs allege that Labcorp refused to provide Plaintiffs access to their employee and personnel records. Compl. ¶¶ 34–39. Plaintiffs argue that summary judgment in their favor is warranted on Claim 3 in its entirety for liability, penalties, and reasonable attorneys' fees and costs because the undisputed facts show that Plaintiffs' counsel made a request in writing and that Labcorp failed to respond within the statutory time period. Pls.' Mot. at 7:6–12, 18:20–19:8. Labcorp argues that summary judgment in its favor is warranted because it "timely responded to Plaintiffs' Labor Code inspection demand." Def.'s Mot. at 28:8–17.

Pursuant to Section 1198.5 of the California Labor Code ("Section 1198.5"),

> [e]very current and former employee, or their representative, has the right to inspect and receive a copy of the personnel records that the employer maintains relating to the employee's performance, including education or training records, or to any grievance concerning the employee.

Cal. Lab. Code § 1198.5(a)(1). Section 1198.5 further states:

> The employer shall make the contents of those personnel records available for inspection to the current or former employee, or their representative, at reasonable intervals and at reasonable times, but not later than 30 calendar days from the date the employer receives a written request, unless the current or former employee, or their representative, and the employer agree in writing to a date beyond 30 calendar days to inspect the records, and the agreed-upon date does not exceed 35 calendar days from the employer's receipt of the written request.

*Id.* at § 1198.5(b)(1). "The employer may take reasonable steps to verify the identity of a current or former employee or their authorized representative. For purposes of this section, 'representative' means a person authorized in writing by the employee to inspect, or receive a copy of, their personnel records." *Id.* at § 1198.5(e).

Section 1198.5 permits the following remedies:

> If an employer fails to permit a current or former employee, or their representative, to inspect or copy personnel records within the times specified in this section, or times agreed to by mutual agreement as provided in this section, the current or former employee or the Labor Commissioner may recover a penalty of seven hundred fifty dollars ($750) from the employer.



United States District Court
Northern District of California

> A current or former employee may also bring an action for injunctive relief to obtain compliance with this section, and may recover costs and reasonable attorney's fees in such an action.

*Id.* at § 1198.5(k), (l).

Here, the Court finds that the undisputed facts show that Labcorp failed to comply with Plaintiffs' request for personnel records. There is no dispute that Plaintiffs' counsel sent a written letter to Labcorp requesting Plaintiffs' personnel records and that Labcorp never provided those records to Plaintiffs' counsel. Def.'s Opp. at 25:11–22; Cohen Decl. ¶¶ 2–6. Labcorp argues that the request was "defective on its face" because it "did not contain or reference any written consent by Plaintiffs themselves that Labcorp could release their records to counsel." Def.'s Opp. at 25:11–22. But Labcorp responded to counsel's request that the records would be forthcoming, so why would counsel need to send any other information to complete the request? Cohen Decl. ¶ 3, Ex. V; *see* Pls.' Reply at 10:9–11:3. Section 1198.5 states that the "employer may take reasonable steps" to verify the identity of an employee's representative; thus, the onus is on the employer to take affirmative steps if more information is needed to complete a request for personnel records. Cal. Lab. Code § 1198.5(e). Yet Labcorp did not request any additional information from Plaintiffs—it simply refused to produce the requested records. Therefore, Labcorp violated Section 1198.5.

Accordingly, the Court **GRANTS** Plaintiffs' Motion for Summary Judgment on Claim 3 for liability, penalties, and reasonable attorneys' fees and costs. The Court finds that Plaintiffs are entitled to a statutory penalty of $750 for each Plaintiff and reasonable attorneys' fees and costs incurred in attempting to obtain compliance with Section 1198.5. Cal. Lab. Code § 1198.5(k), (l). The Court **DENIES** Labcorp's Motion for Summary Judgment on Claim 3.

### E. Breach of Contract Claim (Claim 4)

Plaintiffs allege that Labcorp breached the contract between Labcorp and Plaintiffs where Plaintiffs agreed to perform labor for Labcorp in return for wages. Compl. ¶¶ 40–45. Plaintiffs argue that partial summary judgment in their favor is warranted on Claim 4 for liability because Labcorp's practice of deducting from Plaintiffs' earned wages to offset previously-overpaid commissions is not supported by the plain language of Labcorp's Plans such that Labcorp is in



United States District Court
Northern District of California

breach of its contracts with Plaintiffs. Pls.' Mot. at 2:6–10. Labcorp argues that summary judgment in its favor is warranted because there is no triable issue of fact as to breach as Labcorp adhered to the terms of its Plans. Def.'s Mot. at 24:8–26:25.

To prevail on a breach of contract claim under California law, a plaintiff must prove "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). "Implicit in the element of damage is that the defendant's breach *caused* the plaintiff's damage." *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1352 (2009) (emphasis in original). Whether a party breached a contract is a question of fact. *Locke v. Warner Bros.*, 57 Cal. App. 4th 354, 365 (1997).

In California, contract interpretation is a question of law "when it is based on the words of the instrument alone[.]" *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 395 (2008). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Bank of the West v. Superior Ct.*, 2 Cal. 4th 1254, 1264 (1992) (in bank) (citing Cal. Civ. Code § 1636). "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *State of California v. Cont'l Ins. Co.*, 55 Cal. 4th 186, 195 (2012) (citation omitted). "If contractual language is clear and explicit, it governs." *Bank of the West*, 2 Cal. 4th at 1264. "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage,' controls judicial interpretation." *Cont'l Ins. Co.*, 55 Cal. 4th at 195 (citing Cal. Civ. Code §§ 1638, 1644) (cleaned up). Moreover, "language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." *Another Planet Ent., LLC v. Vigilant Ins. Co.*, 15 Cal. 5th 1106, 1136 (2024) (citation omitted).

A contract provision "will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *Id.* (citation omitted); *see also WYDA Assocs. v. Merner*, 42 Cal. App. 4th 1702, 1710 (1996) ("The trial court's determination of whether an ambiguity exists is a question of law."). "Parol or extrinsic evidence is admissible to resolve an

ambiguity." *WYDA*, 42 Cal. App. 4th at 1710. Courts consider "whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 37 (1968). Where "ascertaining the intent of the parties at the time the contract was executed depends on the credibility of extrinsic evidence, that credibility determination and the interpretation of the contract are questions of fact that may properly be resolved by the jury." *City of Hope*, 43 Cal. 4th at 395.

"Finally, if the uncertainty is not removed by application of the other rules of interpretation, a contract must be interpreted most strongly against the party who prepared it." *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 801 (1998). "This last rule is applied with particular force in the case of adhesion contracts." *Id.*

Here, the Court finds that there is a dispute of fact regarding whether Labcorp breached the terms of the Plans. The parties dispute whether the Plans' plain language permits Labcorp to alter Plaintiffs' NCO values for a Plan year for NCOs not initially sold by Plaintiffs but sold by a different BDD prior to Plaintiffs' employment. Labcorp argues that "the Plans *expressly* permit Labcorp to make both positive *and* negative adjustments to a BDD's Cumulative Performance Attainment based on work scope changes and reconciliations, regardless of the BDD's level of engagement with the particular client or clinical study." Def.'s Mot. at 24:8–26:25 (emphasis in original). Plaintiffs contend that "the Plan does not provide for the reductions associated with previous sales; rather it expressly says these will <u>not</u> apply." Pls.' Opp. at 23:16–25:21 (emphasis in original). Nothing in the Plans' plain language expressly states that Labcorp may include NCO adjustments and reconciliations for NCOs sold by prior BDDs when calculating a current BDD's Cumulative Performance Attainment. On the other hand, nothing expressly states that Labcorp may not include such values in these calculations. The Plans all state:

> NCOs will be credited to the Plan Participant's territory where the Request for Proposal (RFP) was issued unless the management team determines the credit will be assigned to another Plan Participant, <u>who had primary responsibility for the RFP</u>. . . . A Plan Participant will not receive credit for any NCOs where they did not have meaningful engagement.

*E.g.,* 2022 Plans at 8 (emphasis in original). And the 2022 and 2023 plans state: "A study that has not started or has billed limited Revenue for study activity regardless of original contract date will be applied to the original Plan Participant who was awarded the initial work and the current management team." *E.g., id.* at 7.

The Court finds that the Plan language is ambiguous as to whether Labcorp may include NCO adjustments and reconciliations for NCOs not initially sold by Plaintiffs in calculating Plaintiffs' Cumulative Performance Attainment. On one hand, Plaintiffs' construction—that the Plans *do not* permit Labcorp to deduct for adjustments and reconciliations to NCOs a BDD did not initially receive credit for —is reasonable because the Plans state that BDDs do not receive credit for NCOs where they did not have meaningful engagement. Pls.' Opp. at 23:16–25:3. This could show that Plaintiffs' compensation would be based only on NCOs that Plaintiffs sold and changes to NCOs that Plaintiffs sold. *Id.*; *see also* Pls.' Reply at 9:9–16 ("[Labcorp] argues that this 'RFP exception' only applies to new business, but the Plan language contains no such limitation."). And it is reasonable to interpret the Plans' provision that NCOs with limited revenue are applied to the BDD who sold the NCO as encompassing instances where less revenue was realized from the study than originally anticipated. Pls.' Mot. at 18:1–9. But on the other hand, that the Plans specifically state that BDDs do not receive credit for NCOs where they did not have meaningful engagement and that BDDs are not impacted by an NCO that has not started unless they sold that NCO supports that Labcorp's construction—that the Plans *do* permit Labcorp to deduct for adjustments and reconciliations to NCOs a BDD did not initially receive credit for—is reasonable. Def.'s Opp. at 15:1–17:3. This could show that the Plans carved out exceptions to "the default rule that a BDD is responsible for all NCOs in her territory." *Id.*

The Court next looks to the parties' extrinsic evidence to determine whether it supports the parties' proposed constructions of the Plan language. *Pac. Gas & Elec. Co.*, 69 Cal. 2d at 37. "The types of extrinsic evidence relevant to resolving an ambiguity include the circumstances surrounding and leading to the execution of a contract, a party's conduct occurring between execution of the contract and a dispute about the meaning of the contract's terms, and industry custom or practice." *KB Salt Lake III, LLC v. Fitness Int'l, LLC*, 95 Cal. App. 5th 1032, 1051 n.8



United States District Court
Northern District of California

(2023) (cleaned up). Both parties argue that because the extrinsic evidence is in conflict, there are disputed issues of fact that preclude summary judgment. Pls.' Opp. at 25:12–21; Def.'s Opp. at 19:6–24:8. The Court agrees. First, there is conflicting evidence regarding the parties' conduct between executing the Plans and this action. Plaintiffs assert that their primary job is securing new business for Labcorp; Labcorp asserts that Plaintiffs are responsible for both securing new business and growing existing contracts that are inherited upon employment. Rowell Decl. ¶ 7; Garg Decl. ¶¶ 33–34; Goff Dep. Tr. at 118:6–11. Plaintiffs assert that they are not given information regarding NCOs in their territory they did not sell, and that the information is not readily available; Labcorp asserts that there are several tools available to BDDs that permit them to learn about all accounts in their territory. Rowell Decl. ¶ 6; Garg Decl. ¶¶ 32, 35–36; Aikin Decl. ¶ 18; Goff Dep. Tr. at 188:2–22. Second, there is conflicting evidence regarding the parties' course of dealing. Plaintiffs assert that they reached out to management after being surprised by NCO deductions for NCOs Plaintiffs did not even know about and that managers agreed that some deductions were incorrect; Labcorp asserts that even after speaking to their managers, Plaintiffs agreed to the same compensation structure in 2024, 2025, and 2026 that deducted amounts for NCOs Plaintiffs did not originate. Rowell Decl. ¶ 15, Ex. B; Aikin Decl. ¶ 17, Ex. O; Def.'s Opp. at 22:20–25. Finally, there is conflicting evidence regarding industry practice. Plaintiffs assert that standard industry practice is to base a BDD's incentive compensation on contracts that BDD secures; Labcorp asserts that it is standard industry practice to base a BDD's incentive compensation on all active accounts in the BDD's territory. Aikin Decl. ¶¶ 8–9; Garg Decl. ¶¶ 11–12; Goff Dep. Tr. at 49:14–50:18. Overall, because resolving the parties' conflicting assertions requires credibility determinations, whether Labcorp breached the contracts with Plaintiffs is not amenable to resolution on summary judgment. *City of Hope*, 43 Cal. 4th at 395.

Finally, Plaintiffs' argument that the Plans' ambiguity must be resolved in their favor because Labcorp is the drafting party fails. Pls.' Mot. at 17:2–6; Pls.' Opp. at 23:21–22:3. Because there is conflicting extrinsic evidence which cannot be resolved on summary judgment, all tools of contract interpretation are not exhausted. Def.'s Opp. at 19:6–20:7; *see WYDA*, 42 Cal. App. 4th at 1710 ("When two equally plausible interpretations of the language of a contract may

be made, parol evidence is admissible to aid in interpreting the agreement, thereby presenting a question of fact which precludes summary judgment if the evidence is contradictory.") (cleaned up). Therefore, the Court cannot construe the Plans' language against the drafter at this juncture. *Badie*, 67 Cal. App. 4th at 801.

Accordingly, the Court **DENIES** Plaintiffs' Motion for Summary Judgment on Claim 4 for liability. The Court **DENIES** Labcorp's Motion for Summary Judgment on Claim 4.

### F. Violation of Unfair Competition Law Claim (Claim 5)

Plaintiffs allege that Labcorp's "continuing and ongoing unfair and unlawful activity" violates California's Unfair Competition Law ("UCL"). Compl. ¶¶ 46–51. Plaintiffs argue that partial summary judgment in their favor is warranted on Claim 5 for liability based on the same undisputed material facts that support summary judgment on their other claims. Pls.' Mot. at 2:4–5. Labcorp argues that summary judgment in its favor is warranted because (1) Plaintiffs' underlying Labor Code and breach of contract claims fail; and (2) the UCL claim cannot be based on Claim 3. Def.'s Mot. at 28:18–29:13.

Under the UCL, any person or entity that has engaged, is engaging, or threatens to engage "in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code § 17203. The UCL's "purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 320 (2011). "Unfair competition" includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Each prong of the UCL is a separate and distinct theory of liability. *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1127 (9th Cir. 2009). The UCL's coverage is "sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (cleaned up).

Under the UCL's unlawful prong, "[u]nlawful business activity . . . includes anything that can properly be called a business practice and that at the same time is forbidden by law." *Farmers Ins. Exch. v. Superior Ct.*, 2 Cal. 4th 377, 383 (1992) (cleaned up). An action under this prong

United States District Court
Northern District of California

"borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable." *Id.* (cleaned up).

"Under the UCL's unfairness prong, courts consider either: (1) whether the challenged conduct is tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law; (2) whether the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers; or (3) whether the practice's impact on the victim outweighs the reasons, justifications and motives of the alleged wrongdoer." *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020) (cleaned up). "This standard is intentionally broad." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (1999).

Here, the parties agree that the UCL claim rises and falls with Plaintiffs' claims for failure to pay wages and breach of contract. Def.'s Mot. at 28:18–29:13; Pls.' Opp. at 26:20–24. Because Plaintiffs' breach of contract claim survives, the UCL claim also survives. *See Arce v. Kaiser Found. Health Plan, Inc.*, 181 Cal. App. 4th 471, 489 (2010) (explaining breach of contract may form predicate for UCL claim). However, because Plaintiffs are not entitled to summary judgment on the breach of contract claim, they are not entitled to summary judgment on the UCL claim.

Accordingly, the Court **DENIES** Plaintiffs' Motion for Summary Judgment on Claim 5 for liability. The Court **DENIES** Labcorp's Motion for Summary Judgment on Claim 5.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART and DENIES IN PART** Plaintiffs' Motion for Summary Judgment and **GRANTS IN PART and DENIES IN PART** Labcorp's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: October 19, 2026

THOMAS S. HIXSON
United States Magistrate Judge